IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STEPHANIE Z., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:17-cv-1581-BN |
| | § | |
| NANCY A. BERRYHILL, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## **<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Stephanie Z. seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons explained below, the hearing decision is affirmed.

## **Background**

Plaintiff alleges that she is disabled as a result of rheumatoid arthritis, attention deficit disorder ("ADD"), and depression. After her applications for disability insurance benefits and supplemental security income ("SSI") benefits were denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). That hearing was held on October 19, 2015. *See* Dkt. No. 12 (Administrative Record ["Tr."] at 43-63). At the time of the hearing, Plaintiff was 46 years old. She has a tenth grade education, and has past work experience as a waitress, customer service representative, and bartender. Plaintiff has not engaged in substantial gainful activity since December 1, 2007.

The ALJ found that Plaintiff was not disabled and therefore not entitled to disability or SSI benefits. Although the medical evidence established that Plaintiff suffered from rheumatoid arthritis, the ALJ concluded that the severity of that impairment did not meet or equal any impairment listed in the social security regulations. The ALJ further determined that Plaintiff had the residual functional capacity to return to her past relevant employment as a customer service representative.

Plaintiff appealed that decision to the Appeals Council. The Council affirmed.

Plaintiff then filed this action in federal district court. Plaintiff challenges the hearing decision on three general grounds: (1) the ALJ used the wrong legal standard in evaluating the severity of her mental impairments; (2) the assessment of her residual functional capacity is not supported by substantial evidence and results from reversible legal error; and (3) the ALJ erred in finding that she can perform past relevant work because that work was a composite job.

The Court determines that the hearing decision must be affirmed in all respects.

**Legal Standards**

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether Commissioner applied the proper legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Copeland*, 771 F.3d at 923. The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo*. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Copeland*, 771 F.3d at 923; *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). The Court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

"In order to qualify for disability insurance benefits or [supplemental security income], a claimant must suffer from a disability." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)). A disabled worker is entitled to monthly social security benefits if certain conditions are met. *See* 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id.* § 423(d)(1)(A); *see also Copeland*, 771 F.3d at 923; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

"In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the

claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007).

The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *See Copeland*, 771 F.3d at 923; *Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Copeland*, 771 F.3d at 923; *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id*. However, the Court does not

hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows that the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

## Analysis

I.    <u>Severity of mental impairments</u>

Plaintiff argues that the ALJ committed reversible error at Step 2 by finding her mental impairments were not severe – and, specifically, by neither citing nor applying the appropriate legal standard, set forth by *Stone v. Heckler*, 752 F.2d 1099, 1102 (5th Cir. 1985), in evaluating the severity of her mental impairments.

At Step 2, the primary analysis is whether a claimant's impairment, or combination of impairments, is severe, irrespective of age, education, or work experience. *See Stone*, 752 F.2d at 1100. In *Stone*, the United States Court of Appeals for the Fifth Circuit "construed the current regulation as setting the following standard in determining whether a claimant's impairment is severe: '[A]n impairment can be

considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.'" *Id.* at 1101 (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984)). In making a severity determination, the ALJ must set forth the correct standard by reference to Fifth Circuit opinions or by an express statement that the Fifth Circuit's construction of the regulation has been applied. *See Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986).

A court must assume that the "ALJ and Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to [*Stone*] or another [opinion] of the same effect, or by an express statement that the construction [the Fifth Circuit gave] to 20 C.F.R. § 404.1520(c) (1984) is used." *Stone*, 752 F.2d at 1106. Notwithstanding this presumption, the Court must look beyond the use of "magic words" and determine whether the ALJ applied the correct severity standard. *See Hampton*, 785 F.2d at 1311. That is, the presumption may be rebutted by a showing that the ALJ applied the correct legal standard, regardless of the ALJ's recitation of the severity standard, or that the ALJ's application of the incorrect standard was harmless. *See Morris v. Astrue*, No. 4:11-cv-631-Y, 2012 WL 4468185, at *9 (N.D. Tex. Sept. 4, 2012), *rec. adopted*, 2012 WL 4466144 (N.D. Tex. Sept. 27, 2012); *see also Taylor v. Astrue*, No. 3:10-cv-1158-O-BD, 2011 WL 4091506, at *6 (N.D. Tex. June 27, 2011), *rec. adopted,* 2011 WL 4091503 (N.D. Tex. Sept. 14, 2011) (applying harmless error analysis in *Stone* error cases).

In his decision, the ALJ did not cite to *Stone*. In the applicable law section, the ALJ stated that an impairment is severe "if it significantly limits an individual's ability to perform basic work activities." Tr. at 14 (citing 20 C.F.R. §§ 404.1521 & 416.921; SSR 85-28, 96-3p, & 96-4p). This is the very standard set forth in 20 C.F.R. §§ 404.1520(c) and 416.920(c) that *Stone* found to be inconsistent with the Social Security Act. *See Stone*, 752 F.2d at 1104-05; *Craaybeek v. Astrue*, No. 7:10-cv-054-BK, 2011 WL 539132, at *6 (N.D. Tex. Feb. 7, 2011). The ALJ also found Plaintiff's depression and attention deficit hyperactivity disorder ("ADHD") were "not severe" because "they have not more than minimally affected" her "ability to engage in basic work activities." Tr. at 16 (citing 20 C.F.R. § 406.920(c), 416.921, SSR 85-28). The "minimal effect" standard is also wholly inconsistent with *Stone*. *See Craaybeek*, 2011 WL 539132, at *6 (citing cases).

Plaintiff argues that the ALJ committed a *Stone* error by citing and apparently applying the statutory definition of "severe" – stating that an impairment is severe "if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is 'not severe' when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work." Tr. at 14 (citing 20 C.F.R. §§ 404.1521 & 416.921; SSR 85-28, 96-3p, & 96-4p).

The standard that the ALJ recited here allows for a minimal effect on the claimant's ability to work, but the *Stone* severity standard does not allow for any

interference with work ability – even minimal interference. *See Scroggins v. Astrue*, 598 F. Supp. 2d 800, 805-06 (N.D. Tex. 2009); *Morris*, 2012 WL 4468185, at *5. The ALJ therefore erred because he did not actually state the same standard mandated by *Stone*.

In the past, this would be grounds for automatic remand because it constituted a legal error. *See, e.g.*, *Scroggins*, 598 F. Supp. 2d at 806-07; *Sanders v. Astrue*, No. 3:07-cv-1827-G-BH, 2008 WL 4211146, at *8 (N.D. Tex. Sept. 12, 2008). But, more recently, courts have not automatically remanded such cases. *See, e.g.*, *Lacy*, 2013 WL 6476381, at *8; *Rivera v. Colvin*, No. 3:12-cv-1748-G-BN, 2013 WL 4623514, at *6 (N.D. Tex. Aug. 28, 2013); *Easom v. Colvin*, No. 3:12-cv-1289-N-BN, 2013 WL 2458540, at *4-*6 (N.D. Tex. June 7, 2013). Rather, the presumption that legal error occurred based on the incorrect wording of the standard may be rebutted by a showing that the correct legal standard was actually applied by the ALJ, *see Morris*, 2012 WL 4468185, at *9, or that the error was harmless, *see Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012). Many courts have presumed that the *Stone* error is harmless where the analysis continues beyond Step 2. *See, e.g., Lederman v. Astrue*, 829 F. Supp. 2d 531, 539 (N.D. Tex. 2011).

Defendant argues that the ALJ actually applied the correct standard because he applied what has been referred to as the "technique" in evaluating Plaintiff's mental impairments at Step 2. *See* Tr. at 17-18. The "technique" requires an ALJ to rate the degree of functional limitation regarding each medically determinable mental impairment he finds. *See* 20 C.F.R. § 404.1520a(a). The degree of functional limitation

is rated in four broad functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *See* 20 C.F.R. § 404.1520a(c)(3). If the ALJ rates the degree of limitation in the first three functional areas as "none" or "mild" and as "none" in the fourth area, the impairment will be found not severe, unless there is evidence that indicates that there is more than a minimal limitation in the ability to do basic work activities. *See* 20 C.F.R. § 404.1520a(d)(1).

Courts have found that an ALJ has used the appropriate severity standard when he or she has utilized the technique in certain circumstances. *See Walker v. Colvin*, No. 3:14-cv-1498-L-BH, 2015 WL 5836263, at *12 (N.D. Tex. Sept. 30, 2015) (citing *Andrews v. Astrue*, 917 F. Supp. 2d 624, 634-36 (N. D. Tex.2013) (reviewing the ALJ's use of the technique set forth in the regulations for evaluation mental impairments); *Andrade v. Astrue*, No. 4:11-cv-318-Y, 2012 WL 1106864, at *8 (N. D. Tex. Feb 13, 2012) (same); *Martinez v. Astrue,* No. 4:10-cv-883-Y, 2011 WL 3930219, at *7 (N. D. Tex. Aug. 18, 2011) (same)). Although the technique does not contain the severity standard set forth in *Stone*, an ALJ's finding of no limitations or even mild limitations pursuant to the technique would not be inconsistent or contrary to *Stone. See id.* (citing *Stone*, 752 F.2d at 1101, 1104-05 (holding that an impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work"); *White v. Astrue*, No. 4:08-cv-415-Y, 2009 WL 763064, at *11 (N. D. Tex. Mar. 23, 2009) (holding the ALJ's

finding of non-severity was not contrary to *Stone*, despite the ALJ's recitation of an improper standard of severity, where the ALJ applied the special technique set forth in the regulations for evaluating mental impairments and found mild deficits in her concentration, persistence or pace, as well as social functioning")).

In this case, the ALJ found that Plaintiff had no restriction in activities of daily living, no restriction in social functioning, mild restriction in concentration, persistence, or pace, and no episodes of decompensation that have been of extended duration. *See* Tr. at 17-18. Plaintiff contends that, by finding Plaintiff had mild restrictions in concentration, persistence, and pace, the ALJ necessarily expanded the severity standard from "minimal" effect to "mild" effect.

In the narrative concerning the severity of Plaintiff's mental impairments, the ALJ considered the opinions of the State agency psychological consultants ("SCPCs") that Plaintiff had no limitations apart from mild difficulty in the area of concentration, persistence, or pace. *See id.* at 16-17, 70-71, 81-82, 94-95, 105-06. The ALJ explained that he gave those opinions considerable weight because, although the SAPCs could not treat or examine Plaintiff, they cited evidence from treatment notes that Plaintiff's ADHD was controlled on medication as well as evidence from her consultative examination and her subjective allegations. *See id.* at 16-17, 71, 82, 95, 106.

The ALJ also found the SAPCs' opinions were supported by the following evidence. *See id.* at 17.

The ALJ stated that, at the time of her application in August 2013, Plaintiff complained to doctors of fatigue, malaise, depressed mood, difficulty initiating sleep,

feelings of guilt, and marked diminished interest or pleasure. *See id.* at 343-44. But she subsequently denied those symptoms during treatment, *see id.* at 351, 354, which the ALJ found to be inconsistent with an allegation of severe mental impairment. *See id.* at 17.

The ALJ recognized that Plaintiff told the consultative examiner in January 2014 that she had multiple symptoms of ADHD and that she endorsed depressed and irritable mood with markedly diminished interest or pleasure in almost all activities that caused clinically significant distress or impairment in occupational functioning and daily activities. *See id.* at 335-36. But, during the same month, she told her treating source that she had no symptoms. *See id.* at 351. In addition, Plaintiff consistently exhibited an appropriate mood and affect during treatment for her physical impairments. *See id.* at 315, 349, 351, 355, 369, 372, 376. Notably, Plaintiff denied difficulty concentrating and was found to have normal memory. *See id.* at 343-44, 351, 355.

The ALJ also noted that Plaintiff stopped taking her medications in mid-2014. *See id.* at 354, 356, 358. When she returned in early 2016 requesting to get back on medication for symptoms of low mood, difficulty sleeping, and difficulty focusing, *see id.* at 393-94, she acknowledged that she had been very satisfied with control of her symptoms on her medication, *see id.* at 394. After restarting her medications and having them adjusted once, she reported that she was doing good, that she did not need changes to her medications, and that her focus, attention, activity level, and

impulsivity were good. *See id.* at 383, 386, 389, 395, 397. The ALJ concluded that this evidence was inconsistent with severe mental impairments and diminished the credibility of Plaintiff's allegations concerning her mental limitations. *See id.* at 17.

The ALJ then evaluated the degree of Plaintiff's limitation in the four functional areas under the technique.

The ALJ found that Plaintiff had not experienced an extended episode of decompensation because she has not undergone inpatient psychiatric hospitalization, *see id.* at 335, and that her outpatient treatment notes do not suggest that she has experienced a qualifying episode of the requisite durations, *see id.* at 17.

The ALJ found that Plaintiff had no restriction in activities of daily living. *See id.* Plaintiff told the consultative examiner that, although she had significant problems traveling to new or unfamiliar locations, she could prepare for her personal needs, had difficulty with chores only due to physical pain, was good at preparing her own meals, could handle finances, and could shop for groceries. *See id.* at 336. And Plaintiff exhibited good hygiene and average grooming during her consultative examination. *See id.* at 334.

The ALJ found that Plaintiff had no restrictions in social functioning. *See id.* at 17-18. Plaintiff reported during the application process and to the consultative examiner that she had many friends with whom she got along well, that she socialized weekly, and that she had no problems getting along with others, including family and authority figures. *See id.* at 245, 248, 335-36. Also, although Plaintiff exhibited a

depressed mood during her consultative examination, *see id.* at 338, she was cooperative with good judgment and eye contact, and her examinations during treatment consistently showed an appropriate mood and affect, *see id.* at 315, 344, 351, 355, 369, 372, 376.

The ALJ found that Plaintiff had no more than mild limitations in the area of concentration, persistence, or pace. *See id.* at 18.Although Plaintiff told the consultative examiner that she experienced moderate to severe problems starting and finishing tasks, *see id.* at 337, she did not report difficulty in concentrating, remembering, following instructions, understanding, or handling money during the application process, *see id.* at 246, 248-49. Notably, while Plaintiff exhibited a depressed mood during her consultative examination, she exhibited normal activity level, normal thought process and content, average intelligence, adequate fund of information, fair or satisfactory memory, and fair concentration. *See id.* at 337-38. And, again, Plaintiff exhibited an appropriate mood and affect during treatment, *see id.* at 315, 344, 351, 355, 369, 372, 376, and often exhibited intact memory, *see id.* at 344, 351.

Accordingly, the ALJ found that, "because [Plaintiff's] medically determinable mental impairments cause no more than 'mild' limitation in any of the first three functional areas and 'no' episodes of decompensation that have been of extended duration in the fourth area, they are non-severe impairments." *Id.* at 18 (citing 20 C.F.R. 416.920a(d)(1)).

The ALJ's application of the technique in making his severity determination as to Plaintiff's mental impairments is sufficient to avoid reversal under *Stone*. *See Andrews*, 917 F. Supp. 2d 624, 635-36 (finding the ALJ's analysis of the claimant's mental impairments under the technique was sufficient to avoid reversal pursuant to Stone and its progeny); *Andrade*, 2012 WL 1106864, at *8-*9 (finding that, although the ALJ cited conflicting severity standards, his determination pursuant to the technique that the claimant had no severe mental impairments was an implicit finding that her mental impairments had such minimal effect that they would not be expected to interfere with the claimant's ability to work, and was therefore sufficient to avoid reversal under *Stone*); *Martinez*, 2011 WL 3930219, at *7 ("[T]he Court concludes ... that the ALJ's analysis of [the claimant's] depression under the technique, resulting in a finding that [the claimant] had only a mild impairment in the four functional areas, is sufficient to avoid reversal pursuant to *Stone* and its progeny.").

Accordingly, remand is not required on this issue because the ALJ's utilization of the technique supports the conclusion that he ultimately applied the correct severity standard in evaluating Plaintiff's mental impairments.

Moreover, even if the ALJ applied the wrong severity standard, that error would be harmless because the ALJ considered Plaintiff's mental impairments beyond Step 2. At Step 3, the ALJ found that Plaintiff's mental impairments did not meet the severity requirements of the listings because Plaintiff did not have marked limitation in social functioning, daily activities, or concentration, persistent, or pace. *See* Tr. at

118-19; 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 14.09(d). In making this determination, the ALJ stated that he considered all symptoms from all of Plaintiff's medically determinable impairments, which would include her mental impairments, in making his RFC determinations. *See id.* at 19, 20.

And, under either analysis – rebutting the presumption or reviewing for harmless error – substantial evidence supports the ALJ's findings. Although the ALJ misstated the *Stone* severity standard, Plaintiff has failed to cite objectively reliable evidence in the record to establish that these alleged mental impairments resulted in functional limitations. The fact that Plaintiff was diagnosed with or suffered from these conditions – or that they are mentioned in her medical records – does not compel the determination that they represent severe and limiting impairments. The records are consistent with a *Stone* finding of nonseverity. Simply put, there is no evidence that Plaintiff's mental impairments of depression and ADHD rendered Plaintiff unable to work. And the ALJ's decision thoroughly reviewed and cited the medical record before him. *See* Tr. at 16-19.

This is not a situation in which the ALJ cited the incorrect severity standard and then ignored medical records that would support a finding of severity. *See, e.g.*, *Scott v. Comm'r,* No. 3:11-cv-152-BF, 2012 WL 1058120, at *7-*8 (N. D. Tex. Mar.29, 2012); *Scroggins*, 598 F. Supp. 2d at 805-06; *Sanders*, 2008 WL 4211146, at *7. Rather, the ALJ stated a severity standard that has been held to be incorrect but nonetheless examined the medical records and demonstrated that there was no evidence dictating

a mental impairment that would prevent Plaintiff from engaging in substantial gainful activity. *See* Tr. at 16-19. Substantial evidence therefore supports the ALJ's finding that the mental impairments were not severe. As such, even though the ALJ invoked an incorrect recitation of the severity standard, a review of the record as a whole reveals that any error in applying or not applying the *Stone* standard was harmless. *See Taylor*, 706 F.3d at 603.

Accordingly, remand is not required on this ground.

II.    Severity of physical impairment

Plaintiff argues that the ALJ erred in finding that she could perform sedentary level work involving frequent pushing, pulling, operating hand controls, and handling and fingering with the upper extremities because that finding is not supported by substantial evidence of record.

At Step 2, the ALJ found that Plaintiff has the severe physical impairment of rheumatoid arthritis. *See* Tr. at 16. At Step 4, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform the full range of sedentary work. The ALJ found that Plaintiff can lift or carry ten pounds occasionally and less than ten pounds frequently and stand or walk for two hours and sit for six hours in an eight-hour workday. The ALJ also found that Plaintiff can occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs. And the ALJ found that Plaintiff can frequently push, pull, operate hand controls, handle, and finger with the upper extremities. *See*

*id.* at 19. Based on this RFC, the ALJ found that Plaintiff can perform past relevant work as a customer service representative. *See id.* at 23.

In the narrative concerning the severity of Plaintiff's physical impairment, the ALJ observed that, while an x-ray of Plaintiff's right hand showed degenerative changes at the first metacarpal joint space and a subcortical cyst involving the lateral base of the second proximal phalanx, it showed no acute osseous abnormality. *See id.* at 20, 332. The ALJ recognized that Plaintiff consistently exhibited severe rheumatoid arthritis changes in both hands, particularly involving the metacarpal joint of her second and third fingers with puffiness and inflammation. *See id.* at 20, 315, 326, 343-44, 351, 355. The ALJ also noted that Plaintiff applied less pressure for grasping when making a fist, had weak grip strength of 3/5 bilaterally, had ulnar deviation involving both hands, and had some spindling involving proximal interphalangeal joints of most of the fingers in both hands. *See id.* at 20, 325, 326. But these deficits only resulted in moderate reduction in range of motion. *See id.* at 20, 343-44. The ALJ noted that Plaintiff still had normal fine finger movements and had normal ability to handle small objects and button clothing. *See id.* at 20, 325. Therefore, the ALJ concluded that, despite Plaintiff's severe impairment of both hands, she can still reasonably be expected to handle, finger, and operate hand controls frequently bilaterally, *see id.* at 20, and that her manipulative limitations were not debilitating, *see id.* at 21.

The ALJ also stated that Plaintiff reported during the application process and testified and told the consultative examiner that her rheumatoid arthritis caused

unbearable pain at a level of eight or nine out of ten, cramping and crippling of her hands, and inflammation of joints all over her body, including her elbows, wrists. and fingers. *See id.* at 21, 228, 244, 270-71. Plaintiff typically reported the same type of symptoms – pain, swelling in the joints, fatigue and morning stiffness – to her treating sources. *See id.* at 21, 314, 342, 343, 350, 353. But Plaintiff did not typically allege debilitating symptoms to her treating sources. For example, in September 2013, she reported level ten out of ten pain in her shoulder, *see id.* at 21, 314, and, in January 2014, she complained of generalized pain at a level ten out of ten, *see id.* at 21, 350. During other office visits, she rated her pain as constant but moderate*, see id.* at 21, 342, or only moderate, *see id.* at 21, 353. The ALJ found that moderate pain is inconsistent with an allegation of disability. *See id.* at 12.

In his analysis of Plaintiff's limitations in function and daily activities, the ALJ observed that Plaintiff reported that, due to pain and cramping in her hands and fingers, she had difficulty using her hands to pick up items like coins, had difficulty using a knife but could use other utensils, used only unbreakable dishes, could not manipulate buttons and laces such that she could not wear clothing with buttons and wore only slip-on shoes, and could not use her fingers to squeeze bottles like shampoo or to grip a washcloth or razor. *See id.* at 21, 244-45, 249, 271, 272, 323, 353. But, during the consultative examination, Plaintiff showed that she could perform fine fingering normally and normally handle small objects and button clothing. *See id.* at 21, 325. During another examination, Plaintiff reported that she could care for her

personal needs. *See id.* at 21, 248. Plaintiff testified that she could shower independently and reported that she could grocery shop once or twice per week and do laundry, dishes, and simple cooking once per week. *See id.* at 21, 49-50, 248. Plaintiff also reported that her hobbies included reading books and playing dominoes, *see id.* at 21, 248, both of which, the ALJ stated, require a degree of grip strength and manual dexterity, *see id.* at 21.

The ALJ concluded that, although Plaintiff requires some limitation in her ability to use her hands and fingers, those limitations are not debilitating. *See id.* at 21. The ALJ also noted that Plaintiff's doctor instructed her to increase her activity, *see id.* at 21, 355, which the ALJ stated a doctor likely would not do of the claimant had debilitating exertional or postural limitations, *see id.* at 21.

The ALJ also found that Plaintiff's treatment history was inconsistent with an allegation of disability because Plaintiff was treated conservatively with anti-inflammatory medication and pain medication. *See id.* at 21, 312, 314, 344, 350, 355; *Parfait v. Bowen*, 803 F.2d 810, 813-14 (5th Cir. 1986) (holding evidence that a claimant receives conservative pain treatment substantially supports an ALJ's adverse credibility finding against complaints of incapacity and severe pain).

The ALJ acknowledged that Plaintiff reported an inability to afford treatment by a rheumatologist. *See id.* at 21, 251, 272, 323. But Plaintiff was given a referral for a rheumatoid arthritis research study twice and was referred to pain management once, and there is no indication that she followed up with these referrals or was unable

to afford them. *See id.* at 21, 312, 344, 352. The ALJ also stated that Plaintiff received only intermittent treatment for her rheumatism and was taking no medications in 2015. *See id.* at 21, 311, 314, 342-43, 350, 353. The ALJ further stated that, although Plaintiff could not afford to see a specialist, he was aware of no reason that she could not return to the community health center for treatment or refills of medications, especially since she presented there for treatment of other conditions that she does not allege contribute to her alleged disability. *See id.* at 21, 356, 365, 367, 371, 375; *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987) (holding that an inability to afford treatment by itself is insufficient; a claimant must also show that she could not obtain medical treatment from other sources, such as free or low-cost health clinics).

The ALJ gave partial weight to the opinions of the SACPs that Plaintiff had the RFC to frequently push, pull, handle, and finger bilaterally. *See id.* at 21, 72-74, 83-85, 107-09. The ALJ explained that the SACPs opinions supported his findings concerning Plaintiff's lifting, carrying, pushing, pulling, fingering, and handling limitations. *See id.* at 21.

Plaintiff responds by emphasizing that she was diagnosed with severe rheumatoid arthritis changes to both hands on August 27, 2013, September 4, 2013, January 21, 2014, and June 3, 2014, *see id.* at 315, 343, 351, 354, which the ALJ acknowledged in his decision. Plaintiff also states that her treating physician reported on January 6, 2016 that her rheumatoid arthritis resulted in limitations in self-care

and her capacity for independent living and economic self-sufficiency and that Plaintiff had a poor prognosis, *see id.* at 399.

It is the ALJ's duty to resolve conflicts in the evidence, and the Court must give deference to the ALJ's findings if they are supported by substantial evidence. *See Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).Here, the ALJ found that Plaintiff's alleged limitations were neither credible nor incompatible with sedentary work.

Plaintiff also challenges the ALJ's reliance on the consultative examiner's conclusion that Plaintiff was able to perform fine finger movements normally and had normal ability to handle small objects and button buttons because the consultative examiner did not observe Plaintiff's abilities to perform these activities for six hours over an eight-hour period. *See* Tr. at 20, 325. But the consultative examiner was not required to do so. The regulations require that a comprehensive musculoskeletal examination must last at least twenty minutes, and a general medical examination or other non-psychiatric or psychological examinations must last at least thirty minutes. *See* 20 C.F.R. §§ 404.1519n(a)(1)-(5); 416.919n(a)(1)-(5). And not only is there no indication that the consultative examiner did not meet these evaluation time frames, but Plaintiff also does not argue that these time frames were not met. Instead, she argues that "[i]t is beyond believability that an individual with the clearly documented severe RA changes of both hands that [Plaintiff] suffers from could possible operate hand controls, handle, finger, and push/pull for 6 hours of an 8-hour workday, 5 days

a week" and refers to photographs of Plaintiff's hands included in the record. The ALJ, however, based his findings on the objective medical evidence in the record.

The ALJ also noted that although Plaintiff's customer service job requires frequent fingering, it only requires minimal finger dexterity and manual dexterity, has no feeling requirement, and only requires occasional reaching and handling. *See* DICOT 239.362-014 (G.P.O.), 1991 WL 672224 (4th ed., revised 1991). And Plaintiff does not point to evidence that she cannot perform these manipulative functional requirements of this past relevant work as described in the Dictionary of Occupational Titles definition.

Substantial evidence supports the ALJ's finding that Plaintiff could perform sedentary level work involving frequent pushing, pulling, operating hand controls, and handling and fingering with the upper extremities. Accordingly, remand is not required on this ground.

III. <u>Past relevant work</u>

Plaintiff argues that the ALJ erred in finding that she could return to her past relevant work as a customer service representative as that job is generally performed because it was a composite job that has no counterpart in the Dictionary of Occupational Titles ("DOT").

A claimant will be found to be "not disabled" when it is determined that she retains the RFC to perform either the "actual functional demands and job duties of a particular past relevant job" or the "functional demands ... of the occupation as generally required by employers throughout the national economy." SSR 82-61, 1982

WL 31387, at *1-*2 (S.S.A. Nov. 30, 1981); *see also* 20 C.F.R. § 1560(b)(2). To determine whether a claimant can perform his past work, the ALJ is required to assess the physical demands of the claimant's prior work. *See Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). An ALJ may use vocational expert ("VE") testimony to obtain evidence of the physical and mental demands of a claimant's past relevant work either as the claimant actually performed it or as generally performed in the national economy. *See* 20 C.F.R. § 1560(b)(2).

Plaintiff reported that one of her past jobs was as an export supervisor. *See* Tr. at 24, 235. She reported that, in that job, she prepared documents, did accounting, provided sales quotes, did computer entries, performed customer services duties, and did warehouse work. *See id.* at 237. She also reported that she had to lift up to fifty pounds, and had to lift ten pounds frequently. *See id.* The vocational expert ("VE") classified this job as a customer service representative. *See id.* at 60; DICOT 239.362-014 (G.P.O.), 1991 WL 672224. The VE testified that Plaintiff could return to this job both as actually performed and as generally performed in the national economy. *See id.*

Plaintiff's attorney did not raise the composite job issue at the administrative hearing or attempt to demonstrate that Plaintiff's past relevant work was actually a composite job. *See id.* at 61-62; *Brown v. Astrue*, No. 3:08-cv-255-D, 2009 WL 64117, at *6 (N.D. Tex. Jan. 12, 2009).

The ALJ found that Plaintiff could perform past relevant work as a customer service representative as the job is generally performed in the national economy. *See id.* at 23-24. But, because Plaintiff reported that she had to lift up to fifty pounds in that job as she actually performed it, the ALJ found that her ability to return to her past relevant work as a customer service representative as she actually performed it was not established. *See id.*

Plaintiff's testimony, *see id.* at 59, and description of her past relevant work, *see id.* at 237, coincide with the DOT duty description of a customer service representative: talks with customers by phone, receives orders, fills out contract forms, determines charges for service requested, collects deposits, uses computer, may solicit sale of new or additional services, and obtains contracts and deposits. *Compare id.* at 59, 237 *with* DICOT 239.362-014 (G.P.O.), 1991 WL 672224. Plaintiff did not describe or testify to additional duties that would qualify this past relevant work as a composite job, other than lifting fifty pounds. *See* Tr. at 327. And the ALJ found that that job duty would preclude Plaintiff returning to past relevant work as it was actually performed.

The ALJ properly determined that Plaintiff could return to past relevant work as a customer service representative as that job is generally performed in the national economy.

Accordingly, remand is not required on this ground.

## Conclusion

The hearing decision is affirmed in all respects.

DATED: September 18, 2018

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE